**WO**                                                                                           SVK

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph A. Trenton, | No. CV 06-2905-PHX-MHM (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Director Dora Schriro, et al., | |
| Defendants. | |

This is a civil rights action brought by a prisoner confined in the Arizona State Prison Complex.  Plaintiff moves to dismiss Defendants Hammer and Salwitz (Doc. #43), and Schriro, Director of the Arizona Department of Corrections (ADC), the only other Defendant, moves for summary judgment.  (Doc. #46.)  Although the Court  issued a Notice pursuant to <u>Rand v. Rowland</u>, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), advising Plaintiff of his obligation to respond to the summary judgment motion, Plaintiff filed no response.  (Doc. #50.)  The motions are ready for ruling.

The Court will grant the motions and terminate the action.

**I.     Background**

In his Complaint, Plaintiff raised four counts alleging violations of the Eighth Amendment by deliberate indifference to serious medical needs.  Count I alleged deliberate indifference by Defendant Schriro through a policy of failing to provide for 24-hour medical coverage on the weekends.  Plaintiff alleged that he had stroke-like symptoms on Friday, June 17, 2005, asked to see medical personnel, but was not seen until early the following

week. Counts II, III, and IV alleged deliberate indifference by Hammer, nurse Buffington, and Salwitz, respectively. The Court ordered Schriro, Hammer, and Salwitz to answer the Amended Complaint and dismissed Count III and Buffington. (Doc. #7.)

Plaintiff now moves to voluntarily dismiss Salwitz and Hammer; Hammer and Salwitz do not oppose a dismissal with prejudice. (Doc. #43, 44.) Plaintiff's motion will be granted. Schriro moves for summary judgment on the grounds that (1) the medical-care policies did not violate Plaintiff's Eighth Amendment rights and (2) she is entitled to qualified immunity.

**II.    Motion for Summary Judgment**

    **A.    Legal Standards**

        **1.    Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact

conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  However, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c).  At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.  The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.  But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

## 2.    Medical Claim

To prevail on a claim under the Eighth Amendment for prison medical care, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (citations omitted).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the

indifference. <u>Jett</u>, 439 F.3d at 1096. Deliberate indifference may occur if "prison officials deny, delay or intentionally interfere with medical treatment." <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th Cir. 1988). However, a mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. <u>Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985). Plaintiff must show the delay in treatment was harmful. <u>Id.</u> Moreover, mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under 42 U.S.C. § 1983. <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980). Inadequate treatment due to malpractice or even gross negligence does not constitute an Eighth Amendment violation. <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990). And differences in judgment between an inmate and prison medical personnel regarding an appropriate medical diagnosis or treatment are not enough to establish a deliberate-indifference claim. <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996).

### 3. Supervisory Liability

To prevail on a claim under § 1983, a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. <u>Rizzo v. Goode</u>, 423 U.S. 362, 371-72, 377 (1976). To prevail on a claim against a supervisory official, the civil rights complainant must demonstrate that the supervisory official personally participated in the constitutional deprivation, or that she was aware of widespread abuses and, with deliberate indifference to the inmate's constitutional rights, failed to take action to prevent further misconduct, or that she promulgated a policy so deficient that it is a repudiation of a constitutional right and the moving force of the constitutional violation. <u>See</u> <u>MacKinney v. Nielsen</u>, 69 F.3d 1002, 1008 (9th Cir. 1995); <u>Ortez v. Washington County, Or.</u>, 88 F.3d 804, 809 (9th Cir. 1996); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989); <u>King v. Atiyeh</u>, 814 F.2d 565, 568 (9th Cir. 1987); <u>see also</u> <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 691 (1978). There is no *respondeat superior* liability under § 1983, and, therefore, a defendant's

1  position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights

2  does not impose liability.  Monell, 436 U.S. at 691-92; Taylor, 880 F.2d at 1045.

3      **B.**    **Parties' Contentions**

4          **1.**    **Defendant**

5      In support of her motion, Defendant submits her Statement of Facts (Doc. #44

6  (DSOF)); her Responses to Plaintiff's First Request for Admissions (id., Ex. A, Resp. to

7  Req.); excerpts from Plaintiff's deposition (id., Ex. B, Pl. Dep. (July 25, 2008)); Director's

8  Instruction (DI) 237, Response to Inmate Emergencies (id., Ex. C, DI 237); and Department

9  Order (DO) 1100, Inmate Health Services (id., Ex. D, DO 1100).

10      Plaintiff alleged that Defendant Schriro was deliberately indifferent to his serious

11  medical needs by failing to provide 24-hour medical coverage at his prison on weekends.

12  Defendant submits DO 1101, which requires that security, program, transportation and health

13  staff cooperate and coordinate their activities to provide scheduled health care and

14  emergency health treatment. (Id. ¶ 25.) It requires Wardens, Deputy Wardens, and

15  Administrators to ensure that, "[s]ecurity and/or transportation staff exert every reasonable

16  effort to transport inmates for emergency and scheduled health treatment. (Id. ¶ 26.)  In

17  addition, DI 237 states that:

18          It is the standard of the Arizona Department of Corrections to assess and
render aid to all medical emergencies, including suicide attempts, within three
19          (3) minutes of becoming aware of a non-responsive inmate or an inmate in
medical crisis.
20

21          Wardens are expected to incorporate scenarios that require emergency
response within the time limits as described in this Directors Instruction into
existing emergency exercise plans. Wardens are expected to conduct exercise
22          and drills that test staff response time to these situations. Post orders and
Institution Orders must be modified to reflect procedures for the three (3)
23          minute emergency response. The Staff Training Bureau is expected to
incorporate the content of this Bureau is expected to incorporate the content
24          of this Instruction in all applicable lesson plans and curriculum.

25  (Id. ¶ 27, Ex. C at 1.)

26      Defendant argues that Plaintiff fails to show a causal link between her establishment

27  and implementation of ADC's emergency medical policies and the responses to his requests

28  for care.  (Doc. #46 at 7.)  She asserts that even if Plaintiff should have been seen sooner

after he reported his stroke-like symptoms, that alone is insufficient to establish that a dely resulted from the policies or that the policies were deliberately indifferent to Plaintiff's serious medical needs.  (Id. at 6.)  Defendant argues that Plaintiff conceded that his claims were really directed to the officers charged with administering the policies—at his deposition, Plaintiff testified that "as I'm looking at 237 it says that [the officer] should have activated the accident – activated the incident management system."  (Id. at 7; Doc. #44, Pl. Dep. 14:10-15.)

Defendant further argues that because she did not participate in administering medical care to Plaintiff, her liability can only exist at the policy-making level.  (Doc. #46 at 7.)  A supervisor can be liable if she implements "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.  MacKinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995).  Plaintiff fails to identify a facially unconstitutional policy.  (Doc. #46 at 7.)

## 2.     Plaintiff

Plaintiff did not file a response.  But because a verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence, the Court will consider the allegations set forth in Plaintiff's Complaint.  Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

In his Amended Complaint, Plaintiff alleged that although he had expressed the need for emergency medical attention, "the officer refused to initiate the protocol for emergency response."  (Doc. #6.)  He asserted that Schriro allows the prisons to be without 24-hour medical coverage on the weekends and that ADC staff follow a practice of using their own judgment about the seriousness of prisoners' medical needs.  (Id.)  He alleged that Schriro is deliberately indifferent by not having 24-hour medical coverage on the weekend.  (Id.)  Plaintiff also attached to his Amended Complaint various grievance documents and responses.

///

///

## C.    Analysis

Defendant is entitled to summary judgment. Because Plaintiff failed to respond to Defendant's motion for summary judgment, her evidence is undisputed.  Plaintiff does not allege that Defendant had any personal involvement in providing or determining Plaintiff's medical treatment.  Therefore, her liability can only exist at the policy-making level.  See Monell, 436 U.S. at 691-92.  Defendant offers evidence that ADC has promulgated policies regarding emergency medical treatment of inmates and that the policies provide for assessment and aid to all medical emergencies within three minutes of becoming aware of a non-responsive inmate or an inmate in medical crisis.  The policy requires activation of the Incident Management System and calls for training of staff to respond to emergencies. Another policy requires that security, program, transportation and health staff cooperate and coordinate activities to provide emergency health treatment.  Plaintiff fails to offer any evidence to show that the policy was so deficient that it was itself a repudiation of a constitutional right and the moving force behind any constitutional violation.  See MacKinney, 69 F.3d at 1008.

The Court will grant summary judgment to Schriro.  No Defendants remain, and the case will be terminated.


**IT IS ORDERED:**

(1)   The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion to Dismiss (Doc. #43) and Defendant Schriro's Motion for Summary Judgment (Doc. #46).

(2)   Plaintiff's Motion to Dismiss (Doc. #43) is **granted,** and Defendants Hammer and Salwitz are dismissed.

(3)   Schriro's Motion for Summary Judgment (Doc. #46) is **granted**.

///
///
///
///

- 7 -

1        (4)   The action is terminated with prejudice, and the Clerk of Court must enter

2    judgment accordingly.

3        DATED this 22nd day of December, 2008.

Mary H. Murgula
United States District Judge